IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas L. Barker | : | |
| and Julia Barker, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1384 C.D. 2015 |
| | : | Argued: May 12, 2016 |
| Chester County Tax Claim Bureau | : | |
| and CJD Group, LLC | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: July 27, 2016

Thomas L. Barker and Julia Barker (Taxpayers) appeal an order of the Court of Common Pleas of Chester County (trial court) denying their petition to set aside the December 9, 2013, upset tax sale of two properties to CJD Group, LLC. Taxpayers assert that the upset sale was invalid because it did not conform to the requirements of the Real Estate Tax Sale Law.[1]  Specifically, they assert that their agreement of September 5, 2013, with the Chester County Tax Claim Bureau for the installment payment of their past due taxes stayed the upset sale.  We agree and reverse.

Taxpayers own a parcel located at 356 Church Street and another at 153 East Morgan Street in Phoenixville, Pennsylvania.  The parcels are identified, respectively, as Parcel Nos. 1509_03610000 and 1509_07510000.  The Tax Claim Bureau listed both properties for upset sale on September 9, 2013, because of delinquent taxes.

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101 - 803.

On September 5, 2013, Thomas Barker executed an installment agreement (2013 Agreement) with the Tax Claim Bureau to resolve Taxpayers' overdue real estate taxes on eight properties they own, including the two scheduled for sale on September 9, 2013. The other six properties had not been scheduled for an upset sale when the agreement with the Tax Claim Bureau was made.

The terms of the 2013 Agreement were straightforward. Taxpayers agreed to make an immediate payment of $15,000, to be apportioned among the eight properties as follows:

| Parcel ID | Total Owed | 2011 Owed | |
|---|---|---|---|
| 1505_03950000 | $10,138.85 | $5,256.48 | ($2,100 paid) |
| 1509_03610000 | $ 6,498.06 | $3,394.02 | ($1,400 paid) |
| 1509_03670000 | $ 8,959.85 | $4,580.11 | ($1,900 paid) |
| 1509_07520000 | $ 2,943.25 | $1,575.57 | ($700 paid) |
| 1509_07510000 | $ 8,934.49 | $4,640.37 | ($1,900 paid) |
| 1512_01900000 | $ 8,201.19 | $4,265.25 | ($1,700 paid) |
| 1512_01900100 | $ 8,058.20 | $4,192.02 | ($1,700 paid) |
| 2706G00900000 | $15,330.61 | $7,990.34 | ($3,600 paid) |

Reproduced Record at 116a (R.R. __). The 2013 Agreement further stated that

> [O]wner agrees to pay the balance due of prior liened taxes in installments as follows:
>
> - The amount of $15,000 at the time of Agreement
>
> - The remaining balance of 2011 real estate taxes owed by December 6, 2013
>
> - The remaining balance of 2012 real estate taxes owed by June 30, 2014

***

2

The Tax Claim Bureau … in consideration of said payments and the within Agreement by the said owner to pay the balance due of said taxes in installments as aforesaid as well as pay both current and future taxes due to all taxing authorities, agrees that sale of said parcels for delinquent taxes shall initially be continued to December 9, 2013 and then stayed for 2013 so long as the said Agreement on the part of the said owner herein made is being fully complied with.

R.R. 116a.

On November 1, 2013, the Tax Claim Bureau sent a letter to Taxpayers reminding them of the upcoming installment payment of the 2011 taxes scheduled for December 6, 2013. Its letter advised:

As was explained at the time the installment agreement was executed, these properties will be exposed at the December 9, 2013 Continued Upset Tax Sale if the terms of the agreement are not fully met.

R.R. 117a. On December 11, 2013, Taxpayers learned that the Church Street and East Morgan Street properties had been sold at the December 9, 2013, upset tax sale.

Taxpayers filed objections, and the trial court conducted a hearing. Jonathan Schuck, Director, testified on behalf of the Tax Claim Bureau. Both Taxpayers also testified.

Schuck first testified about Taxpayers' Morgan Street property, parcel 1509_03610000. On August 30, 2010, Mrs. Barker entered into an installment agreement (2010 Agreement) to stay the sale of the Morgan Street property scheduled for upset sale in September 2010.[2] The 2010 Agreement required the

---

[2] Mrs. Barker entered into six separate agreements on August 30, 2010. Schuck claimed that Mrs. Barker defaulted on all of the agreements, but he did not testify about the other five agreements.

first payment in September 2010 to be followed by a second payment on October 1, 2010, a third on January 1, 2011, and the balance on April 1, 2011. On March 25, 2011, Taxpayers remitted a payment of $4,611.54 that discharged the full balance owed under the 2010 Agreement.

Schuck testified that Mrs. Barker contacted him in September 2013 to request an installment agreement on eight properties, for which their taxes were past due. Schuck agreed. However, he testified that this installment agreement was not governed by Section 603 of the Real Estate Tax Sale Law, which gives taxpayers one year to get current on their delinquent taxes once they make a payment of 25% of the amount of delinquent taxes.[3]

---

[3] Section 603 states:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. *So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed. But in case of default in such agreement by the owner or lien creditor, the bureau, after written notice of such default given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent.* If sufficient payment has been made to discharge all the taxes and claims which would have caused the property to be put up for sale, the property may not be sold. If sufficient payment has not been received to discharge these taxes and claims, the bureau shall proceed with the sale of such property in the manner herein provided either at the next scheduled upset sale or at a special

**(Footnote continued on the next page . . . )**

Schuck testified that the 2013 Agreement was not governed by Section 603 because Taxpayers had defaulted on the 2010 Agreement. Section 603 provides that a taxpayer who defaults on an installment agreement is not eligible for another installment agreement until three years have elapsed. Because three years had not elapsed since their default on the 2010 Agreement, Taxpayers were not eligible for a Section 603 agreement in September 2013. Schuck testified that the 2013 Agreement was nothing more than a 90-extension of the upset sale, from September 9, 2013, to December 9, 2013.

Schuck testified that he discussed the 90-day extension with Mrs. Barker in a series of e-mails. It was Mr. Barker who came to the Tax Claim Bureau to sign the 2013 Agreement, at which time Schuck went over its terms. When Taxpayers missed the December 6, 2013, payment of the 2011 taxes on all eight properties, the Church Street and East Morgan Street properties proceeded to an upset sale on December 9, 2013.

Schuck testified about the Tax Claim Bureau's notifications to Taxpayers. He confirmed that it did not inform Taxpayers, who paid the entire balance owed under the 2010 Agreement before the stated deadline, that they had defaulted on that agreement. He also confirmed that he did not inform Mr. Barker that if full payment of the 2011 taxes on eight properties were not fully paid by December 6, 2013, that two of the properties covered by the 2013 Agreement

---

**(continued . . . )**

> upset sale, either of which is to be held at least ninety (90) days after such default. If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default.

72 P.S. §5860.603 (emphasis added).

would be sold on December 9, 2013.  Finally, he confirmed that when Taxpayers missed the December 6, 2013, payment, the Tax Claim Bureau did not notify them of their default or that two of the properties would be sold three days later.

Mr. Barker testified.  He stated that he arrived at the Tax Claim Bureau on September 5, 2013, with a check for $15,000.  He was given the 2013 Agreement and time to read it.  Mr. Barker assumed the 2013 Agreement was the same as the 2010 Agreement.  Mr. Barker was not advised that the two properties scheduled for sale in September would be sold in December if the 2011 taxes owed on all eight properties were not paid by December 6, 2013.[4]

The trial court found, based on Schuck's testimony, that Taxpayers did not make a timely interim payment on the 2010 agreement.  However, the trial court did not address whether, in light of Taxpayers' full payment by the last scheduled payment date, the late interim payment constituted a default within the meaning of Section 603 of the Real Estate Tax Sale Law.  The trial court sidestepped the issue of whether Taxpayers were eligible in 2013 for a Section 603 installment agreement.  It observed, rather, that a tax claim bureau can agree to any type of payment plan, such as the 90-day installment agreement offered to Taxpayers in 2013.

The trial court concluded that the 2013 Agreement was not governed by Section 603 of the Real Estate Tax Sale Law and that Taxpayers should have known that the 2013 Agreement, with a 90-day duration, was different from the 2010 Agreement.  The trial court noted that the 2010 Agreement was captioned

---

[4] Approximately six weeks after the record was closed, Taxpayers sought to reopen the case to take further evidence on the issue of whether Taxpayers actually defaulted on the 2010 Agreement.  Their request was denied.

6

"Agreement to Stay Tax Sale" and referred to Section 603. By contrast, the 2013 Agreement was captioned "Installment Agreement" and did not refer to Section 603.

On appeal to this Court,[5] Taxpayers contend that the trial court erred. First, the Tax Claim Bureau did not establish that Taxpayers defaulted on the 2010 Agreement. Second, the trial court incorrectly presumed that the Tax Claim Bureau did not have to stay the sale scheduled for September 9, 2013, when Taxpayers presented a payment of $15,000. Third, the 2013 Agreement violated due process by not giving Taxpayers one year to get current and not providing for a notice of default. Fourth, the trial court erred in refusing to reopen the record to take additional evidence.

We begin with a review of the Real Estate Tax Sale Law. We have explained that the statute was not enacted to deprive citizens of their property or to create investment opportunities for those who attend tax sales but, rather, to assist the collection of taxes. *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1216 (Pa. Cmwlth. 2003). The United States Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating that

> [p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

---

[5] Our review is to determinine whether the trial court committed an error of law, abused its discretion, or rendered a decision without supporting evidence. *Darden v. Montgomery County Tax Claim Bureau*, 629 A.2d 321, 323 (Pa. Cmwlth. 1993).

7

*Jones v. Flowers*, 547 U.S. 220, 234 (2006). Because of these due process concerns, this Court has explained that

> the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute.

*Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003). A failure by a tax claim bureau to comply with each and every statutory requirement will nullify a sale. *Id*. at 1252.

In their first issue, Taxpayers assert that they were wrongly denied a payment plan that conformed to Section 603 of the Real Estate Tax Sale Law. Taxpayers explain that under the 2010 Agreement, they were required to make a second payment on October 1, 2010, a third payment on January 2, 2011, and a final payment of the remaining balance on April 1, 2011. R.R. 111a. They did not make two intermediate payments on time, but those payments were included in the $4,611.54 they paid one week before the final payment was due. Because they paid the entire balance when due, they did not default on the 2010 Agreement. Further, the Tax Claim Bureau never advised them that they were in default of the 2010 Agreement, and notice of default is required by Section 603. As a matter of law, therefore, Taxpayers did not default on the 2010 Agreement. Even more to the point, the Tax Claim Bureau never shared with Taxpayers the Bureau's legal theory that they were not eligible for a Section 603 agreement in 2013 because of the way they handled the 2010 Agreement.

The Tax Claim Bureau contends that Taxpayers' admitted failure to make interim payments between October 1, 2010, and March 25, 2011, constituted a default. As such, Taxpayers were not entitled to a Section 603 agreement in

8

2013 and, thus, Schuck properly offered them, instead, a 90-day "extension" agreement.

Section 603 provides that a taxpayer who pays 25% of the tax due may have a pending property sale stayed by agreeing to pay "in not more than three (3) installments all within one (1) year of the date of said agreement," the balance owed. 72 P.S. §5860.603. Section 603 further states that

> in case of default in such agreement by the owner or lien creditor, the bureau, *after written notice of such default* given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent.

*Id.* (emphasis added).

Here, the Tax Claim Bureau did not prove that Taxpayers defaulted on the 2010 Agreement.[6] Section 603 obligated the Tax Claim Bureau to notify Taxpayers, in writing, of their default of the 2010 Agreement, and the Tax Claim Bureau concedes that it never so notified Taxpayers. Section 603 also provides, that after notice of default, the Tax Claim Bureau is authorized to list the property at "the next scheduled upset sale." 72 P.S. §5860.603. If the Tax Claim Bureau really believed Taxpayers defaulted on the 2010 Agreement, it should have relisted the property for "the next scheduled upset sale." *Id.* It did not do so. In short, the Tax Claim Bureau did not comply with either Section 603 provision for the

---

[6] The 2010 Agreement required a payment of $1,213.73 on August 30, 2010, a second payment on October 1, 2010, a third payment on January 2, 2011, and final payment on April 1, 2011. Taxpayers made the first and final payments early, and the second and third payments late. However, the entire amount of taxes and costs owed was paid in March with the final installment and in advance of the deadline. Notably, the 2010 Agreement gave Taxpayers seven months to complete payments, even though Section 603 gives taxpayers a full year.

9

handling of the alleged default of the 2010 Agreement. Either the Tax Claim Bureau did not consider the delay in the interim payments to constitute a default or, by not giving notice to Taxpayers of their "default," waived its right to claim that Taxpayers defaulted on the 2010 Agreement. In either case, Taxpayers cannot be charged with a default of the 2010 Agreement.

Our conclusion that the Tax Claim Bureau did not prove a default of the 2010 Agreement is determinative of our disposition of Taxpayers' second issue, *i.e.*, that they were entitled to an installment agreement in 2013 that conformed to the requirements of Section 603. Taxpayers contend that Section 603 obligated the Tax Claim Bureau to stay the sale of the Church Street and East Morgan Street properties upon tender of $15,000. Further, upon default in December, they were entitled to (1) a notice of the default and (2) a notice that the two properties would be listed for upset sale. Neither occurred.

The Tax Claim Bureau responds that assuming, *arguendo,* that a default did not occur in 2010, Taxpayers were not entitled to a Section 603 agreement because they did not pay 25% of the outstanding taxes owed on their eight properties. The $15,000 covered 22% of the outstanding taxes. We reject this argument.

The correspondence between Schuck and Mrs. Barker began with an e-mail from Mrs. Barker with a subject line "agreement for stay of tax sale." R.R. 115a. Mrs. Barker's email then stated that Taxpayers needed agreements for eight properties, which were listed by number. She then explained:

> I have 15K to pay as down payment. We have 2 properties up for sale and hope to pay these taxes off in full with the sale of one of the properties.
>
> Please advise.

10

*Id.* Schuck responded that he was "[w]illing to set-up a 90-day extension agreement on the below eight parcels for down payment of 15K." *Id.*

In *In Re Consolidated Return of the Tax Claim Bureau of the County of Beaver from the August 16, 2011 Upset Sale for Delinquent Taxes,* 105 A.3d 76 (Pa. Cmwlth. 2014), *petition for allowance of appeal denied*, 121 A.3d 497 (Pa. 2015), this Court recognized that an upset sale must be stayed where a taxpayer pays 25% of the taxes due and agrees to an installment plan for the remainder. Further, where a taxpayer makes a payment of 25% or more, "the tax claim bureau *must* advise the taxpayer of the Section 603 option because its failure to do so 'would deprive the owner of his or her property without due process of law.'" *Id.* at 82 (emphasis added) (quoting *Darden*, 629 A.2d at 323).

Mrs. Barker specifically requested a stay of the tax sale of the two properties scheduled for the upcoming tax sale. At that time, the total due on the Church Street property was $6,498.06 and the total due on the Morgan Street property was $8,934.19. The $15,000 far exceeded 25% of what was owed on those two properties. At that point, the Tax Claim Bureau was obligated to offer her a Section 603 agreement and to stay the tax sale for the two properties listed for sale. It did not do so.

The Tax Claim Bureau argues, in the alternative, that it is not limited by the terms of Section 603 when it negotiates with delinquent taxpayers. It points to Section 601(a) of the Real Estate Tax Sale Law, which authorized it to continue a scheduled upset sale for any reason. The Tax Claim Bureau asserts that it complied with Section 601(a), which states, in relevant part, as follows:

> The bureau shall schedule the date of the sale no earlier than the second Monday of September and before October 1, and the sale may be adjourned, readjourned or continued. No additional notice of sale is required when the sale is adjourned,

11

readjourned or continued if the sale is held by the end of the calendar year. The bureau may, for convenience and because of the number of properties involved, schedule sales of property in various taxing districts or wards on different dates. Except as otherwise provided in this article, all sales shall be held by the bureau by the end of the calendar year.

72 P.S. §5860.601(a).

Section 601(a) permits a tax claim bureau to continue any scheduled sale to the end of the calendar year. There are many reasons why a tax claim bureau may wish to continue a sale, such as the failure of an upset sale to produce a bid equal to the amount of the delinquent taxes. When a sale is continued, the tax claim bureau need not repeat all the notice requirements undertaken for the first scheduled upset sale. However, Section 601(a)(1) also provides as follows:

> (1) The bureau shall sell the property if all of the following are met:
>
> (i) A tax claim has become absolute.
>
> (ii) *The property has not been discharged from the tax claim nor removed from sale under section 603*; or a tax judgment has been entered against the property prior to January 1, 1948, and is unsatisfied, and a sale of the property has not been stayed by agreement under this article.
>
> (iii) The property is not in the possession of the sequestrator.

72 P.S. §5860.601(a)(1) (emphasis added). Section 601(a) did not authorize the Tax Claim Bureau's actions here.

A sale pursuant to Section 601(a) cannot take place where a property's sale is not governed by Section 603 of the Tax Sale Law. 72 P.S. §5860.601(a)(1)(ii). Here, the Tax Claim Bureau was obligated to offer Taxpayers

12

a Section 603 installment plan option when they tendered $15,000. Likewise, the Tax Claim Bureau was not permitted to sell their two properties under authority of Section 601(a)(1)(ii) because Taxpayers met the requirements for having their properties "removed from sale under Section 603." 72 P.S. §5860.601(a)(1)(ii).

For the above-stated reasons, we reverse the order of the trial court.[7]

_____
MARY HANNAH LEAVITT, President Judge

---

[7] Because we reverse, we need not address Taxpayers' additional legal and constitutional claims.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas L. Barker : 
and Julia Barker, : 
        Appellants : 
                             : 
        v. : No. 1384 C.D. 2015
                             : 
Chester County Tax Claim Bureau : 
and CJD Group, LLC : 

## **O R D E R**

AND NOW, this 27th day of July, 2016, the order of the Court of Common Pleas of Chester County, dated June 30, 2015, is hereby REVERSED.

_____
MARY HANNAH LEAVITT, President Judge