# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Rachael Hoyt | : | |
| | : | No. 869 C.D. 2023 |
| | : | |
| Appeal of: Rachael Hoyt | : | Submitted: December 9, 2024 |

BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
                      HONORABLE MATTHEW S. WOLF, Judge
                      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                                                      FILED: March 17, 2025

Rachael Hoyt (Hoyt) appeals from an order of the Court of Common Pleas of Mifflin County (trial court) dated June 5, 2023, which denied her petition to set aside an upset tax sale of her property. The trial court found no basis to set aside the sale.  We affirm.

Hoyt owned and resided at the property located at 18 North Water Street, McVeytown, Pennsylvania (Property).  On September 12, 2022, the Property was exposed to an upset tax sale (Tax Sale) by the Mifflin County Tax Claim Bureau (Bureau) for delinquent real estate taxes in the amount of $1,558.18. The successful bidder at the Tax Sale was Olga Levi (Levi, and together with the Bureau, Appellees) who purchased the property for $3,012.92.

On October 21, 2022, Hoyt, represented by counsel, filed in the trial court a petition to set aside the Tax Sale (Petition).  Hoyt argued that she suffered a serious medical condition and hospitalization three days before the Tax Sale, which prevented her from paying the delinquent taxes before the sale or attending the sale.

Hoyt requested the ability to pay the delinquent taxes and redeem the Property. The trial court held a hearing on the Petition on December 6, 2023.

Hoyt, who was also represented by counsel at the hearing, testified that due to a serious medical condition in the weeks before the Tax Sale, there were periods when she did not regularly check her mail. Original Record (O.R.), Ex. A (Notes of Testimony, December 6, 2023 Hearing (N.T.) at 8-10.[1] She underwent major surgery on September 9, 2023, three days before the Tax Sale. *Id.* Hoyt explained that on the day of the Tax Sale, Levi came to the Property to inspect it, which prompted her to realize the Tax Sale was imminent. *Id.* at 11. Hoyt and her husband immediately went to the courthouse and arrived in time for the Tax Sale but did not have cash to pay the taxes. *Id.* at 11-12.

On cross-examination, Hoyt acknowledged that she spoke with the Bureau's counsel at the Tax Sale about paying the taxes, who told her they would wait for Hoyt and her husband to retrieve cash from an ATM (banks were closed at the time) and would remove the Property from the sale list if she could pay. *Id.* at 12-14. Hoyt stated that she had enough money to pay the delinquent taxes, and that the only reason she and her husband did not return with payment was that she was unable to withdraw the money because she does not have an ATM card. *Id.* at 14. There was neither testimony nor argument at the hearing that Hoyt had paid any portion of the outstanding taxes prior to the sale.

In its June 5, 2023 order, the trial court denied the Petition and upheld the Tax Sale. On June 16, 2023, Hoyt filed a letter attempting to challenge the trial

---

[1] Because the version of the Notes of Testimony in the Reproduced Record appears to include handwritten annotations by Hoyt not present in the Original Record, and was apparently not served on Appellees, we will cite the Notes of Testimony in the Original Record. *See* Appellees' Br. at 6-7 nn.5-6.

court's order, which the trial court treated as a notice of appeal by July 7, 2023 order. The trial court directed the filing of a statement of errors complained of on appeal, which Hoyt filed on August 28, 2023. *See* O.R., Item No. 16 (Rule 1925(b) statement). In a letter filed in lieu of a formal opinion under Pa.R.A.P. 1925(a), the trial court reasoned:

> After review of the record and the transcripts of all proceedings, this Court believes that Ms. Hoyt objected to the sale of her home because she was in the hospital a few days prior to the sale[.] The fact that she had an unexpected hospital stay does not negate the fact that Ms. Hoyt was aware of the back taxes and had ample time to make payment prior to the sale. Furthermore, Ms. Hoyt could have brought the requisite payment to the Sherriff s Sale, which she failed to do. After extensive research, this Court finds so [sic] legal basis to grant her request to Set Aside the Sale.

O.R., Item No. 19.

On appeal,[2] Hoyt raises the following issues:[3] (1) whether she was given proper notice of the Tax Sale, including by posting and certified mail; (2) whether the trial court erred in accepting her concession to proper notice that her counsel made before the trial court; (3) whether the Bureau erred in failing to properly notify her of the overdue taxes and/or to offer an installment payment plan for those taxes in advance of the sale, given that she had paid a portion of the outstanding taxes before the sale; and (4) whether her then-counsel erred in various

---

[2] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Shipley v. Tax Claim Bureau of Delaware Cnty.*, 74 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2013) (quoting *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth. 1999)).

[3] For ease of analysis, we have reorganized the issues presented in the portion of Hoyt's brief setting forth the questions involved. *See* Hoyt's Br. at 4-5.

3

ways before the trial court, including by failing to request discovery or a continuance.

Appellees argue that Hoyt has waived all issues on appeal, either by failing to raise them and/or conceding them before the trial court, or by attempting to set forth new issues in her brief that did not appear in her Rule 1925(b) statement. Appellees also argue that the Court should disregard Hoyt's attempts to attach or rely on extra-record documents in her brief, reproduced record, and supplemental briefs, because those documents or assertions of fact are not before the Court on appeal. Finally, Appellees argue that to the extent Hoyt did not waive the issue of counsel's decisions and actions before the trial court, that issue is not subject to appeal because there is no right to counsel in tax sale cases.

"[I]ssues not included in the statement of errors complained of on appeal and/or not raised in accordance with the provisions of [Pa.R.A.P. 1925(b)(4)] are waived." *Fouse v. Saratoga Partners, L.P.*, 204 A.3d 1028, 1034 (Pa. Cmwlth. 2019), *aff'd sub nom. Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198 (Pa. 2020), *cert. denied*, 141 S.Ct. 2599 (2021). Appellate review is restricted to the issues raised in the Rule 1925(b) statement. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). But each issue raised in the Rule 1925(b) statement must also have been preserved before the trial court. Otherwise, it is deemed waived and will not be addressed on appeal, even if included in the Rule 1925(b) statement. Pa.R.A.P.302(a); *In re Petition to Set Aside Upset Tax Sale*, 218 A.3d 995, 998 (Pa. Cmwlth. 2019).

In her Rule 1925(b) statement filed, Hoyt set forth five issues:[4]

---

[4] Hoyt's Rule 1925(b) statement is 20 pages long and consists substantially of narrative statements and assertions of fact outside the record. Such a statement does not comply with **(Footnote continued on next page…)**

4

[(1)] I would like to appeal the tax sale because I had ineffective counsel and was ill advised[.]

[(2)] I would like to appeal this tax sale because there was no notice taped to my front door as a reminder[.]

[(3)] I would like to appeal the tax sale because I was not offered any type of extension as my extenuating circumstances were known[.]

[(4)] I would like to appeal the tax sale because my residential address does not exist, and I am unsure who is responsible for the address accuracy.

[(5)] I would like to respectfully appeal Ms. Levi's right to intervene in the tax sale of property 18 North Water Street, McVeytown PA, in this Statement of Notice to the court.

O.R., Item No. 16, at 20 (pagination supplied).  Of those issues, all but the third were either conceded before, or never raised before, the trial court when it was considering Hoyt's Petition.  N.T. at 6-7, 15 (stipulating to and conceding proper notice of Tax Sale); *id.* at 15 (conceding residential address); *id.* (granting intervention of Levi without objection).  We acknowledge that some of those concessions were articulated by Hoyt's counsel rather than by Hoyt herself as a witness.  But "[a]s the agent of his client, of course, acts or statements made by an attorney, in the course of employment and within the scope of the attorney's authority, are binding on the

---

Pa.R.A.P. 1925(b) and would ordinarily risk waiver of all issues.  *See Brandywine Hosp., LLC v. Cnty. of Chester Bd. of Assessment Appeals*, 291 A.3d 467, 476 (Pa. Cmwlth.) (en banc), *reargument denied* (Apr. 14, 2023), *appeal denied sub nom. In re Brandywine Hosp., LLC*, 308 A.3d 779 (Pa. 2023), *reconsideration denied* (Jan. 29, 2024).  However, Hoyt also included a true statement of issues in the form of a summary or conclusion on the last page of the statement.  Having reviewed the statement, it appears that the summary fairly encapsulates the issues Hoyt wished to raise, and we will consider those issues as having been raised in the statement.

client." *Dep't of Transp., Bureau of Driver Licensing v. Yandrich*, 529 A.2d 1210, 1211-12 (Pa. Cmwlth. 1987).

Thus, the third issue—regarding extension due to extenuating circumstances—is the only issue preserved before the trial court and in the Rule 1925(b) statement. This issue, as it is discussed in Hoyt's principal brief and her supplemental/reply briefs, could include two sub-issues. First, she could be challenging the Bureau's pre-sale communications about the taxes due and its perceived refusal to offer an installment payment plan. She is also apparently challenging the Bureau's refusal to wait longer for her to pay the taxes during the Tax Sale itself.

Initially, we note that the Tax Sale was conducted under Article VI(a) of the Real Estate Tax Sale Law (RETSL), which establishes the procedures for collection of taxes through upset sales and judicial sales, and also for objecting to such sales.[5] Objections to an upset tax sale under RETSL are limited to the "regularity or legality of the proceedings of the [tax claim] bureau *in respect to such sale*." *Appeal of Yardley*, 646 A.2d 751, 755 (Pa. Cmwlth. 1994) (emphasis added) (citing Section 607(d) of RETSL, 72 P.S. § 5860.607(d)). If a property owner does not timely challenge a notice of a tax claim, then "the claim shall become absolute" and the owner cannot use the objection process to challenge whether and how the underlying taxes must be paid. Section 311 of RETSL, 72 P.S. § 5860.311; *In re Upset Sale, Tax Claims Bureau of Montgomery Cnty.*, 198 A.2d 640, 641 (Pa. Super. 1964); *Romig v. Mifflin Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 1138 C.D. 2021, filed Aug. 10, 2023), slip op. at 4, 2023 WL 5113061, *appeal denied*, 309 A.3d 693

---

[5] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.601-.609.

6

(Pa. 2023).[6] Thus, we reject any claim by Hoyt that the Bureau's communications in the notices of claims render the Tax Sale suspect.

Regarding whether the Bureau should have been more accommodating of Hoyt's situation during the Tax Sale itself, RETSL is clear. As Hoyt concedes, Section 603 of RETSL gave her the right to prevent the sale by entering into an agreement with the Bureau to pay at least "[25%] of the amount due on all tax claims . . . and agreeing therein to pay the balance of said claims . . . in not more than three (3) instalments all within one (1) year of the date of said agreement." 72 P.S. § 5860.603. But Section 603 is not dispositive here.

First, Section 603 of RETSL appertains only "prior to the actual sale." *Id.* We have consistently held that Section 603 imposes a duty on the tax claim bureau to offer a payment plan to the owner if the owner has paid, or offered to pay, at least 25% of the taxes due prior to the tax sale. *See Moore v. Keller*, 98 A.3d 1, 5 (Pa. Cmwlth. 2014). Hoyt claims as fact in her Rule 1925(b) statement and brief that she did pay part of the taxes due before the sale, leaving a balance of $577. *See* O.R., Item No. 16, at 3-4 (pagination supplied); Hoyt's Br. at 6-8. She claims the Bureau told her the evening of the sale she must pay $577 in full to prevent the sale and did not offer an installment plan under Section 603. Hoyt's Br. at 6. But before the trial court—including in written submissions and at the hearing—there was no testimony or argument whatsoever relevant to Section 603. Hoyt herself pleaded in her Petition that she owed $1,558.18 before the sale. *See* O.R., Item No. 2 (Pet.), ¶ 3. The $577 amount appears for the first time in Hoyt's 1925(b) statement, after the trial court rendered its decision. The Section 603 issue was simply not before the trial court to decide. Indeed, Hoyt expressly disclaimed reliance on "any statute . . .

---

[6] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

7

or anything like that," and was "just asking for some kind of understanding and leniency." N.T. at 5, 17. Thus, we distinguish *Moore* and related decisions on Section 603, because in all of those cases, Section 603 was raised in and litigated before the trial court and formed an express basis for the decision we reviewed. *See, e.g., In Re Consol. Return of Tax Claim Bureau of Indiana Cnty. from Sept. 16, 2019 Upset Sale for Delinq. Taxes*, 250 A.3d 508, 511 (Pa. Cmwlth. 2021) (quoting trial court's citation and discussion of *Moore*); *Matter of Tax Sale 2018-Upset*, 227 A.3d 957, 960 (Pa. Cmwlth. 2020) (summarizing owner's testimony regarding installment plan and trial court's reliance on *Moore*). As much as we might like to examine Hoyt's claims of partial payment in the interest of fairness, a remand and reopening of the record to apply *Moore* would unfairly prejudice Appellees by giving Hoyt a second opportunity to raise and prove new objections to the sale.

The Dissent faults the Bureau for not introducing into evidence the notices of return and claims for the outstanding tax amounts to address the Section 603 issue, "despite the fact that [Hoyt] conceded that she received" the notices. Dissenting Opinion at 4. In support, the Dissent posits a general rule: "To satisfy its burden . . . , the [Bureau] was required to demonstrate **in its case in chief** that it had the **authority** to sell the Property," which would entail offering "evidence, at the outset of the hearing, of the amounts [Hoyt] owed, and the amounts [Hoyt] had already paid." *Id.* at 3 (emphasis in original) (citing *Barker v. Chester Cnty. Tax Claim Bureau*, 143 A.3d 1069 (Pa. Cmwlth. 2016)). This contention is neither supported by precedent generally nor *Barker* in particular. In *Barker*, 143 A.3d 1069, the property owners had entered into several installment payment agreements with the tax bureau. They disputed the effect of their installment payments under Section 603's 25% threshold and the tax bureau raised an issue about whether the

8

owners' earlier defaults under the agreement made their payments ineffective under Section 603. There was extensive discussion on those issues, *id.* at 1071-72, which allowed the trial court to conclude that some of the installment agreements were "not governed by Section 603," *id.* at 1073. Clearly, Section 603 and the amount of the outstanding taxes were placed into issue in the trial court in *Barker*.

This case is clearly both factually and procedurally distinguishable from *Barker*. Hoyt never raised a Section 603 issue until her appeal here. In the trial court, she never raised an issue about the alleged amount of outstanding taxes or partial payment, and she admitted in her Petition that the amount of the outstanding taxes was $1,558.18. There was no evidence, claim or dispute about the fact of prior partial payment of the taxes.

The Bureau is not expected to put on evidence about every conceivable legal or procedural defect in a tax sale—and thus in its authority to sell—simply because objections are filed. Neither RETSL nor our interpreting caselaw imposes so broad an "affirmative duty" on the Bureau. *Cf.* Dissenting Opinion at 3. Instead, once an objector raises a specific defect, either in the objection petition or in proceedings before the trial court, the Bureau must prove that it complied with the provisions of RETSL that are relevant to that defect. The Bureau's initial burden of proof is narrower: it must prove "compliance with the statutory *notice* provisions [of RETSL]." *In re Consol. Reports & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (en banc) (emphasis added); *accord Horton v. Wash. Cnty. Tax Claim Bureau*, 81 A.3d 883, 889 (Pa. 2013); *Maya v. Cnty. of Erie Tax Claim Bureau*, 59 A.3d 50, 55 (Pa. Cmwlth. 2013); *In re Tax Sale of Real Prop. Situated in Jefferson Twp.*, 828 A.2d 475, 479 (Pa. Cmwlth. 2003), *aff'd*, 859 A.2d 471 (Pa. 2004). That burden of proof,

9

like any in our adversarial system, is subject to a caveat: that "parties are bound by their counsels' judicial admissions" which are "'conclusive in the case' and 'have the effect of withdrawing a fact from issue and dispense wholly with the need for proof of the fact.'" *Basinger v. Adamson*, 297 A.3d 10, 18 (Pa. Cmwlth. 2023) (quoting *Bartholomew v. State Ethics Comm'n*, 795 A.2d 1073, 1078 (Pa. Cmwlth. 2002)).

In this case, the only specific objection raised in the Petition was that "due to her health condition at the time of sale, and her physical inability to pay the taxes or attend [the] sale, it would be fair and equitable for this Honorable Court to set aside the upset sale and allow [Hoyt] to redeem the property." Pet. ¶ 9. However, the evidence at the hearing of this matter, in the form of the testimony from Hoyt herself, was that she went to the sale, and met with counsel for the Bureau and she indicated that a payment would be made for which counsel waited without the return of Hoyt.

Thus, we disagree with the Dissent's assertion that Hoyt "did not have prior notice of" the Tax Sale. Dissenting Opinion at 6. Hoyt's counsel made repeated, clear judicial admissions that service and notice of the Tax Sale were properly made by the Bureau. N.T. at 5, 15. In response, the Bureau noted on the record that, as is customary, it would stand on that admission and would not put on evidence of notice, and Hoyt's counsel acknowledged that. N.T. at 15-16. Those admissions are conclusive on their own, but Hoyt's own testimony also is consistent with her admissions: she "didn't even go to the post office" for two to three months because of her illness, but she knew that the taxes were due and simply misremembered the relevant date. N.T. at 9-10. Because counsel made clear admissions (and Hoyt's own testimony supported those admissions) on the record

10

after a colloquy with the trial judge about their consequences, this is not a situation where we should look past them and force the Bureau to prove a point that was purposefully conceded. *Cf. In re Sale of Tax Delinq. Prop. on Oct. 19, 2020*, 308 A.3d 890, 899 (Pa. Cmwlth. 2024) (disregarding pro se litigant's nonspecific admission of notice "about delinquent taxes" made on cross-examination without judicial colloquy). As a matter of law, Hoyt had prior notice of the Tax Sale.[7]

Finally, the Bureau did afford Hoyt fair opportunities to pay the taxes, including at the Tax Sale itself immediately before the sale occurred, but she did not return to do so. Hoyt testified that she was present at the Tax Sale prior to its completion and discussed payment options with the Bureau's representative. Her testimony was not that her illness was totally disabling or deprived her of capacity,[8] but merely that she "could not get the money out" and "didn't bring checks" with her to the courthouse. N.T. at 13. But Hoyt conceded proper service and the regularity of the sale, and effectively admits she did not tender payment at the sale. She asks only for the opportunity to redeem the property now that she can tender that payment. Payment was possible here—the Bureau was open for business and waiting for Hoyt to return with payment as she had stated she would. *Cf.* Dissenting Opinion at 4-5 (citing *In Re: Upset Sale Tax Claim Bureau of Columbia Cnty., Pa.*

---

[7] We note also that this matter does not involve any nonwaivable jurisdictional issues. This matter arose from an upset tax sale, not a judicial sale, so "there was no need for a valid court order to approve the [T]ax [S]ale prior to it occurring." *In re Sale of Real Est. by Lackawanna Cnty. Tax Claim Bureau,* 255 A.3d 619, 631 (Pa. Cmwlth. 2021) (holding that in judicial sale cases, a failure of notice presents a jurisdictional defect in the trial court's initiating order, which defect may be raised at any time).

[8] A duly adjudicated lack of capacity, which is not before us here, might counsel a different result. *See, e.g., In re Strickler* (Pa. Cmwlth., No. 2651 C.D. 2015, filed Oct. 12, 2016), 2016 WL 5933377 (reviewing sufficiency of service prior to upset tax sale on objections filed by guardian appointed for incapacitated property owner).

*Held September 14, 2009* (Pa. Cmwlth., No. 2476 C.D. 2009, filed July 8, 2010)). In this situation, the Bureau was not required to indefinitely postpone the scheduled and duly noticed sale to create extra opportunities for payment.

Finally, under RETSL, there is no right of redemption from an upset sale once the sale occurs. Section 501(c) of RETSL, 72 P.S. § 5860.501(c) ("There shall be no redemption of any property after the actual sale thereof."); *Pacella v. Wash. Cnty. Tax Claim Bureau*, 10 A.3d 422, 430 (Pa. Cmwlth. 2010); *see also* Section 618 of RETSL 72 P.S. § 5860.618 (providing limited right for owner to re-purchase property, but only "if [the] property *remains unsold* after an upset sale" (emphasis added)). Indeed, Hoyt conceded that she has no right to redeem the Property, asking only for leniency and acknowledging there is no statutory remedy available to her. N.T. at 16-17. We must reject her attempt to fit the remedy of redemption, which the statute forbids, into the narrow objection process under RETSL.[9]

Accordingly, we affirm the trial court's order.



MATTHEW S. WOLF, Judge

---

[9] We recognize that "[t]he purpose of tax sales is not to strip the taxpayer of [her] property but to ensure the collection of taxes." *Pacella*, 10 A.3d at 425. We sympathize deeply with Hoyt, who lost her home of 20 years over a little more than $1,500 in back taxes, all while she was seriously ill and had the money to pay the taxes. But our hands are tied. We "may not disregard the express and plain language of a statute under the pretext of pursuing its spirit," even to be lenient in a sympathetic case like this one. *Id.* at 430. One could reasonably be unsettled by the outcome in this case, but Hoyt asked only for the opportunity to redeem the Property after an upset tax sale, which RETSL specifically prohibits. Perhaps RETSL would be more fair or just—and would more accurately reflect what we claim is its true purpose—if it allowed redemption. But that would require action by our General Assembly.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In re: Rachael Hoyt            :
                           :   No. 869 C.D. 2023
                           :
Appeal of: Rachael Hoyt   :

# **O R D E R**

AND NOW, this 17th day of March 2025, the June 5, 2023 order of the Court of Common Pleas of Mifflin County is AFFIRMED.

_____
MATTHEW S. WOLF, Judge

In re: Rachael Hoyt            :
                                   :       No. 869 C.D. 2023
                                     :
Appeal of: Rachael Hoyt       :       Submitted: December 9, 2024

BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MATTHEW S. WOLF, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## _**OPINION NOT REPORTED**_

DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED: March 17, 2025

        I respectfully dissent. Contrary to the Court of Common Pleas of Mifflin County (trial court) and Majority's assessment, this case is not simply about a taxpayer's concession that all notices were sent. To me, this is an absolutely egregious case of depriving a taxpayer of her property without due process. Rachael Hoyt (Taxpayer) testified that she did not become aware of the sale until moments before it occurred, and that the Mifflin County Tax Claim Bureau (Tax Bureau) told her less than an hour prior to the sale to return with a cash payment by 7:00 p.m., after the Tax Bureau knew that all banks were closed. She further asserts on appeal that "[t]he amount [she] was asked to pay was more than 25% of what was due. **Partial payment (almost half) was already paid**. [She] asked for a stay and to enter into an agreement and none was offered." (Taxpayer's Brief at 8) (emphasis added). The record includes no documents or testimony from the Tax Bureau establishing the Tax Bureau had the authority to sell Taxpayer's property. Therefore, it is impossible from this record to confirm (1) what amounts were due and for what year(s); or (2) whether Taxpayer paid 25% of her delinquent taxes prior to the sale. Without evidence that the Tax Bureau had the authority to sell Taxpayer's property, this Court cannot possibly affirm the tax sale.

Section 603 of the Real Estate Tax Sale Law (RETSL)[1] provides:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment.

72 P.S. § 5860.603.

Where a property owner pays at least 25% of taxes owed, a taxing authority **has an affirmative duty** to inquire whether the owner desires to enter into an installment agreement, as a matter of fundamental fairness and due process. *Reilly v. Susquehanna County Tax Claim Bureau*, 904 A.2d 49 (Pa. Cmwlth. 2006). A county tax claim bureau **lacks authority** to sell a taxpayer's real property at an upset tax sale under the sale date provision of the RETSL after taxpayer has tendered more than 25% of the amount due. *Sampson v. Tax Claim Bureau of Chester County*, 151 A.3d 1163 (Pa. Cmwlth. 2016) (taxpayers' payment entitled them to have their property removed from sale under the removal from sale provision of the RETSL, and the tax claim bureau was obligated to offer the taxpayers an agreement under the removal from sale provision). In *Moore v. Keller*, 98 A.3d 1 (Pa. Cmwlth. 2014), we held that the trial court was required to grant a resident's petition to set aside the tax sale of her house, where the resident was the equitable owner of the house as a devisee of her grandmother, the resident paid well in

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

excess of 25% of the taxes due for the year, and the county tax claim bureau failed to offer the resident the opportunity to enter into an installment agreement before holding the tax sale. In *Jenkins v. Fayette County Tax Claim Bureau*, 176 A.3d 1038 (Pa. Cmwlth. 2018), an upset tax sale of residential property due to the taxpayer's failure to pay real estate taxes on property was properly voided, as required for the trial court to set aside the sale, where she attempted to make a cash payment before the upset sale took place but the tax claim bureau refused payment, and it turned the taxpayer away without first determining whether her payment would have covered 25% of the delinquent taxes owed on the property or offering her an installment agreement.

To satisfy its burden of demonstrating that Taxpayer was afforded due process under the RETSL, the Tax Bureau was required to demonstrate **in its case in chief** that it had the **authority** to sell the Property, which required the proffer into evidence, at the outset of the hearing, of the amounts Taxpayer owed, and the amounts Taxpayer had already paid. Had the Tax Bureau done that, the trial court could have determined that Taxpayer had paid at least 25% of the amount due. While the case is otherwise distinguishable, we can look to *Barker v. Chester County Tax Claim Bureau*, 143 A.3d 1069 (Pa. Cmwlth. 2016), as an example of where a tax bureau established in its case in chief that a taxpayer paid over 25% of her delinquent tax debt. I also submit that a tax bureau has the **affirmative duty** to disclose that information to the trial court at the outset of the hearing so that the trial court can make a fully informed decision. However, none of that information was of record; therefore, the Tax Bureau in this case did not meet its burden of demonstrating fully to the trial court that all due process requirements of the RETSL were met or that it had authority to sell Taxpayer's property because it failed to introduce into the record the notice of return and claim, which should show the outstanding taxes due and payments received. The fact that Taxpayer did not raise this at trial does not change the fact that the Tax Bureau did not meet its initial burden to

PAM - 3

demonstrate that it had the authority to sell the Property and **strictly complied** with Section 603 of the RETSL.

Because of the Tax Bureau's failure, it is entirely unclear from the record what amounts were due, what amounts had been paid prior to the sale, and whether Taxpayer had paid at least 25% of the amount due prior to the sale. There is no evidence in the record as to whether the Tax Bureau was required to, or why it did not, offer Taxpayer the opportunity to enter into an installment agreement to stay the sale. The record, as it exists, does not allow us to resolve whether the Tax Bureau was required under Section 603 to offer Taxpayer the opportunity to enter into installment agreement before holding the tax sale. I believe that since Taxpayer did pay some amount towards the delinquency, the Tax Bureau was obligated to (via its duty to be candid with the trial court), but did not, introduce into evidence any of the required notices or receipts that would have specified the amount of the tax delinquency, and payments received. Absent these findings I believe the Court is unable to complete meaningful appellate review. I would thus remand to the trial court to take evidence and make a complete record on the amount of partial payments made by Taxpayer, and to make credibility determinations in reaching a decision on whether the Tax Bureau was required to offer Taxpayer the opportunity to enter into an installment agreement. Alternatively, I see no impediment to taking judicial notice of the Tax Claim Receipts the Tax Bureau sent to Taxpayer, that are attached to Taxpayer's brief, since the tax sale is a matter of public record and a part of the official records of Mifflin County, at the very least, to show that Taxpayer had made some payments towards the outstanding taxes, as grounds for our remand. These were records that the Tax Bureau should have, but did not, enter into evidence, despite the fact that Taxpayer conceded that she received the notices.

Moreover, the Tax Bureau also failed to demonstrate that it provided Taxpayer with a meaningful opportunity to redeem her Property under Section 501 of the RETSL, 72 P.S. § 5860.501. The undisputed evidence showed that Taxpayer appeared at

the Tax Bureau on the day of the sale, and said she had the means, money and motive to pay prior to the sale.

Our courts have held that taxpayers must be given a "fair opportunity" to pay her taxes (redeem) prior to the tax sale under Section 501 of the RETSL, 72 P.S. § 5860.501. *See In Re: Upset Sale Tax Claim Bureau of Columbia County, Pennsylvania Held September 14, 2009* (Pa. Cmwlth., No. 2476 C.D. 2010, filed July 8, 2010) (tax bureau denied owner a fair opportunity to pay his taxes prior to the tax sale because it was closed on the day before the sale and did not notify owner that it would be closed); *Petition of Witmer*, 16 Pa. D. & C. 3d 559, 564 (1980) (a public servant has a duty to make every attempt to see that an opportunity exists for those who wish to redeem their property to do so).

I note that the undisputed evidence demonstrates that Taxpayer suffered a very serious medical issue that began in early 2022 and involved hospitalization and major surgery only three days prior to the scheduled upset sale, and as a result she was physically unable to pay the delinquent taxes in the days prior to the sale, consult with counsel, attend the sale, or come up with a cash payment less than two hours prior to the sale. (Hearing Transcript, December 6, 2022, at 8-14.) At the hearing, Taxpayer testified that she was recovering from major surgery and that **she had just learned** around 4:00 or 5:00 p.m. that the sale was to occur that day **because the person who was going to purchase it showed up at her house**. *Id.* at 11. She hurried to the Tax Bureau where staff told her to get **some undisclosed amount** of cash and bring it back to stop the sale. **That amount was never offered into evidence or proven at the hearing. There is no evidence that the amount was some percentage of the total amount due or as to how it was determined. There were no exhibits offered to establish the amount of the delinquency or amounts that were already paid**. I believe in these circumstances, it was incumbent upon the Tax Bureau to establish these basic facts so that the trial court could make an informed decision based on a full and complete record-**which it did not**.

PAM - 5

I have found no case that has upheld the tax sale of a property where no evidence of the amounts due or received was introduced into the record before the trial court. The record before this Court, **and before the trial court**, simply does not support upholding the tax sale of someone's home of 19 years.

Moreover, the Tax Bureau knew at the time it gave Taxpayer a so-called "opportunity" that the **banks were already closed** and that "she was trying to make a payment up until the time of the sale." *Id.* at 7. Therefore, I do not agree with the Majority that the Tax Bureau gave Taxpayer any meaningful opportunity to pay the taxes. In these circumstances the Tax Bureau had a duty to assure that Taxpayer's redemption attempt would be given affect but failed to do so. The record establishes that the Tax Bureau was put on notice that Taxpayer did not know about the sale, that she had been gravely ill, and that she did not have the means to comply with the Tax Bureau's demands for a cash payment in the evening hours on such short notice. Once the Tax Bureau learned that Taxpayer did not have prior notice of the tax sale, it should have stopped the tax sale to confirm that proper notices were given and to give Taxpayer a meaningful opportunity to establish she did not get prior notice of the sale and to allow her to pay the balance owed.

This Court has consistently held that "[t]he purpose of a tax sale is not to strip an owner of his property but rather to insure the tax on the property is collected." *In re 2005 Sale of Real Estate by Clinton County Tax Claim Bureau Delinquent Taxes*, 915 A.2d 719, 724 (Pa. Cmwlth. 2007), *as amended* (Apr. 4, 2007) (citing *Murphy v. Monroe County Tax Claim Bureau*, 784 A.2d 878, 883 (Pa. Cmwlth. 2001)). The property at issue is Taxpayer's home where she and her family have lived for 19 years. As it turns out, it was sold for an outstanding tax lien of $1,558.18. Taxpayer has alleged throughout these entire proceedings that her grave illness prevented her from knowing about the sale prior to hours before it occurred, and that she has the monies necessary to satisfy the outstanding debt owed to the Tax Bureau.

Accordingly, I would vacate the order of the trial court and remand for further proceedings.

_____
PATRICIA A. McCULLOUGH, Judge