Patricia M. SMITH

v.

## TAX CLAIM BUREAU OF PIKE COUNTY.

**Appeal of Jerry Bellarmino.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2003.

Decided Oct. 31, 2003.

Ronald M. Bugaj, Honesdale, for appellant.

Jan S. Lokuta, Milford, for appellee, Pike County Tax Claim Bureau.

John H. Klemeyer, Milford, for appellee.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge LEAVITT.

The Tax Claim Bureau of Pike County (Bureau) and Gerard Bellarmino (Intervenor) appeal from an order of the Court of Common Pleas of Pike County (trial court) granting Patricia M. Smith's (Mrs. Smith) Petition to Set Aside Tax Sale. We affirm.

On April 15, 1983, Mrs. Smith and her husband (Mr. Smith) purchased a one-half acre lot as tenants by the entireties in Pike County, Pennsylvania. They continued, however, to maintain their primary residence in Huntingdon, New York. Sometime in September 1996, Mr. and Mrs. Smith separated, and Mrs. Smith moved to Auburn, New York.[1] Mrs. Smith notified the Huntingdon Post Office to forward her mail to her new address in Auburn, New York, but she did not notify the Pike County Tax Claim Bureau or the Pike County Tax Assessment Office of her change of address.

Mr. Smith agreed to remain responsible for payment of the real estate taxes on the Pike County property, but he did not pay them in tax years 1997, 1999 and 2000. As a result, the Bureau exposed the property to a tax upset sale in 1998, and again in 2000 and 2001. When bids were not made at these tax sales, the Bureau exposed the property to another upset sale scheduled for September 25, 2002.

Prior to sale, the Bureau attempted to notify both Mr. and Mrs. Smith of the impending tax sale as required by the Real Estate Tax Sale Law (Law).[2] The Bureau

---

1. Though estranged, Mr. and Mrs. Smith are not legally separated and remain married.

2. Specifically it requires,

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices.

\* \* \*

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.
(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.
Act of July 7, 1947, P.L. 1368, 602, as amended, 72 P.S. 5860.602.

advertised the tax sale in the *Pike County Dispatch* on August 22, 2002, and in the *News Eagle* on August 24 and 25, 2002. It posted the property with a Notice of Impending Sale on August 25, 2002. It mailed notices to both Mr. and Mrs. Smith by certified-mail, restricted-delivery, 30 days before the pending sale to Huntingdon, New York. The return cards pertaining to these notices were not admitted into evidence, but the trial court found that Mr. Smith signed the receipt for the notice addressed to Mr. Smith as well as that addressed to Mrs. Smith. Trial Court Opinion at 3. The Bureau also mailed notices by first-class mail 10 days before the pending sale to both Mr. and Mrs. Smith, again to the Huntingdon, New York address.

No action was taken by either Mr. or Mrs. Smith, and the property was sold at the scheduled tax sale to the Intervenor for $13,500. After the sale, the Bureau sent post-sale notices to both Mr. and Mrs. Smith in Huntingdon, New York, both of which came back marked "unclaimed."

After the trial court entered a confirmation *nisi* of the upset sale, Mrs. Smith petitioned the trial court to set aside the tax sale, alleging that the sale was defective because the Bureau did not provide proper notice to her under Section 602 of the Law. After a hearing held on February 10, 2003, the trial court invalidated the tax sale, concluding that, although the Bureau did comply with the notice provisions of Section 602, it did not comply with the notice requirements of Section 607.1.[3] The Bureau appealed, and the purchaser of the property intervened in the appeal.

On appeal,[4] the Intervenor first argues that the trial court erred in concluding that Mr. Smith was not authorized to sign a notice of impending tax sale on behalf of his wife. He argues that the evidence presented was sufficient to support the conclusion that Mr. Smith had this authorization, at least implicitly, by virtue of the agreement to have Mr. Smith pay the taxes on the property.

■ With respect to property owned as tenants by the entirety, there is a pre-

---

**3.** Section 607.1 of the Act of July 7, 1947, P.L. 1368, added by Section 30 of the Act of July 3, 1986, P.L. 351 provides,

> a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such *mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of* such notification by the named addressee or is not returned or acknowledged at all, *then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.* The bureaus efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. 5860.607a (emphasis added).

**4.** Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law or rendered a decision with a lack of supporting evidence. *Donofrio v. Northampton County Tax Claim Bureau,* 811 A.2d 1120 (Pa. Cmwlth.2002).

sumption that during the term of the marriage either spouse has the power to act for both, without specific authorization, so long as the benefits of such action inure to both. This presumption stands unless the other spouse establishes by a preponderance of the evidence that the acting spouse was not in fact authorized by the other spouse. *Polarine v. Tax Claim Bureau*, 125 Pa.Cmwlth. 622, 557 A.2d 1175 (1989).

In the matter before the Court, Mrs. Smith testified that although there was an agreement that Mr. Smith would pay the taxes on the property, she never authorized anyone to sign for her mail received through the United States Postal Service; specifically, did she did not authorize Mr. Smith to sign for any tax notices. Under *Polarine*, once Mrs. Smith presented evidence on this issue, the burden shifted to the Bureau to show evidence to the contrary. At that point, the trial court was required to act on the evidence presented without regard to the presumption.

Intervenor argues that Mr. Smith did in fact have "implicit authorization" by virtue of the fact that Mrs. Smith "implicitly delegated" the authority to receive on her behalf any notices dealing with the payment of taxes. However, the trial court specifically found "[u]pon consideration of the credibility of the witnesses, this Court determined that petitioner Patricia Smith did not authorize her husband to sign for and accept notices on her behalf." ¶ 7 at Trial Court Opinion submitted pursuant to Pa. R.A.P. 1925. It is the exclusive province of the trial court, as factfinder, to weigh the evidence, to make credibility determinations and to draw reasonable inferences from the evidence presented. *Commonwealth v. Fidelity Bank Accounts*, 158 Pa.Cmwlth. 109, 631 A.2d 710 (1993). As the trial courts conclusion is supported by substantial evidence in the record, this Court may not disturb those findings on appeal. *Earl Township v. Reading Broadcasting, Inc.*, 770 A.2d 794 (Pa.Cmwlth.2001).

Next, the Intervenor argues that the Bureau satisfied Section 607.1 of the Law, which requires the Bureau to undertake reasonable efforts to locate the owner of the property after its notice of the tax sale is returned without the owner's personal signature. Intervenor suggests that the efforts of the Bureau were reasonable because Mrs. Smith had moved without so notifying the Bureau. Accordingly, the potential loss of her property through a tax sale was a risk that Mrs. Smith took when she delegated responsibility for paying the taxes on the property to Mr. Smith.

The Law, however, imposes duties not upon owners but upon the agencies responsible for real estate tax sales. Notice to owners of an impending sale of their properties is a duty requiring strict compliance in order to guard against the deprivation of property without due process. *McElvenny v. Bucks County Tax Claim Bureau*, 804 A.2d 719 (Pa.Cmwlth. 2002). Thus, the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute. *Chester County Tax Claim Bureau v. Griffith*, 113 Pa.Cmwlth. 105, 536 A.2d 503 (1988). Mrs. Smith did not have a duty to give the Bureau notice of her address change.

Finally, the Bureau argues that because Mrs. Smith never lived in Pike County, the "Trial Court's insistence on strict construction of Section [607.1] is abuse of discretion." The mandate to "search phone directories, records and indices, would be a futile act which would accomplish no further protection for the

property owner and could at the same time require a pointless task." Bureau's Brief at 4.

Whether the statutory task is pointless does not excuse its attempted performance. The Bureaus argument that pursuing the statutory requirements for additional notice of a tax sale would not have made a difference is mere speculation. *See Sabarese v. Tax Claim Bureau of Monroe County,* 69 Pa.Cmwlth. 442, 451 A.2d 793 (1982) (rejecting a taxing bureaus argument that even if it had sent the notices as statutorily required, the notices would not have been received).

■■■ The forfeiture of real property is a serious matter. As our Pennsylvania Supreme Court has explained:

> Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizens property to forfeiture for the nonpayment of taxes. We have had occasion before to note that we hold no brief with willful, persistent and long standing tax delinquents, but at the same time, we have also observed that the strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes. *Ross Appeal,* 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). As this Court stated in *Hess v. Westerwick,* the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes. 366 Pa. 90, 98, 76 A.2d 745, 748 (1950). The collection of taxes, however, may not be implemented without due process

of law that is guaranteed in the Commonwealth and federal constitutions; and this *due process, as we have stated here, requires at a minimum that an owner of land be actually notified by government, if reasonably possible,* before his land is forfeited by the state.

*Tracy v. County of Chester Tax Claim Bureau,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985) (emphasis added). Accordingly, the Bureau has the burden of showing compliance with the statutory notice provisions set forth in both Section 602 and Section 607.1 of the Law. *Donofrio v. Northampton County Tax Claim Bureau,* 811 A.2d 1120, (Pa.Cmwlth.2002); *Tax Sale of Real Property Situated in Jefferson Township,* 828 A.2d 475 (Pa.Cmwlth. 2003).[5]

Section 607.1 of the Law requires that where, as here, a notice of a tax sale is mailed to an owner and returned without the personal signature of the addressee or there are other circumstances raising a significant doubt as to personal receipt of the Bureaus notice, the Bureau must undertake reasonable efforts to discover the whereabouts of that person. 72 P.S. 5860.607a. Those efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. *Id.* In the absence of any evidence of such reasonable efforts being undertaken by the Bureau, the tax sale in question here must be set

---

**5.** The Intervenor also argues the trial court erred because it presumed the Bureau did not take any additional efforts to locate Mrs. Smith because the Bureau only presented evidence on its compliance with Section 602 of the Law. It was not the trial court's place to "presume," but the Bureau's burden to present evidence on any additional efforts as required under Section 607.1.

aside. The statute must be strictly construed so that the collection of taxes, which can cause the loss of property, conforms to the due process guarantees of our Pennsylvania and federal constitutions. *Tracy*, 507 Pa. at 297, 489 A.2d at 1339.

Accordingly, the opinion and order of the trial court is affirmed.

### ORDER

AND NOW, this 31st day of October, 2003, the order of the Court of Common Pleas of Pike County dated March 20, 2003, in the above-captioned matter, is hereby affirmed.