IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Henry McClain,             :
                Appellant   :
                                :
         v.                : No. 114 C.D. 2024
                                : Submitted: May 6, 2025
Delaware County Tax Claim Bureau   :
and Matthew Stanisic            :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE WALLACE                  FILED: August 28, 2025


James Henry McClain (Taxpayer) appeals from the January 12, 2024 order of the Court of Common Pleas of Delaware County (trial court) denying Taxpayer's petition to set aside the Delaware County Tax Claim Bureau's (Bureau) December 15, 2022 upset tax sale of Taxpayer's property located at 112 Summit Road, Darby Borough, Pennsylvania (the Property) to Matthew Stanisic (Purchaser). Taxpayer asserts the trial court erred in failing to set aside the Bureau's tax sale of the Property because the Bureau violated the Real Estate Tax Sale Law (RETSL)[1] by 1) selling the Property less than 90 days after Taxpayer defaulted on an installment payment agreement, and 2) failing to make adequate efforts to locate Taxpayer before the upset tax sale. Because we agree the Bureau violated the

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101 - 5860.803.

RETSL by selling the Property less than 90 days after Taxpayer defaulted on an installment payment agreement, we reverse the trial court's order.

## I.     Background

Taxpayer admits he was delinquent in paying the Property's 2020 real estate taxes. Taxpayer's delinquency, including late fees and interest, had risen to $3,565.52 by December 2021. Therefore, the Bureau scheduled the Property for the September 22, 2022 upset tax sale. *See* Reproduced Record (R.R.) at 57a. The Bureau provided Taxpayer with various forms of notice of the upset tax sale, which Taxpayer is not challenging.

On June 21, 2022, Taxpayer went to the Bureau's office and requested a payment plan for his delinquent real estate taxes. *Id.* at 67a. On the Bureau's Upset Sale Contact Sheet, which the Bureau used to document all contacts with Taxpayer regarding his delinquency, the Bureau listed Taxpayer's mailing address as 3 Hathaway Court, New Castle, Delaware (Residential Address). *Id.* Additionally, when Taxpayer appeared at the Bureau's office in person on June 21, 2022, he specifically reiterated that he was using the Residential Address[2] for mail.

On June 24, 2022, Taxpayer and the Bureau executed an "Upset Price Sale - Payment Agreement Tax Year(s) 2020" (Agreement), which provided, in relevant part:

> I . . . intending to be legally bound, agree to make payments on a regular basis to the **[BUREAU]**. Provided payments are made as scheduled, the **[BUREAU]** will continue the pending Tax Sale. If payments are **not** made as scheduled, I [] understand that my property will subsequently be placed in the next Upset Price Sale which will be held on September 22, 2022 . . . . *The [Bureau] will be under no obligation*

---

[2]   Taxpayer explained in later testimony that he was residing with his mother at the Residential Address and renting the Property to a tenant, whom he was in the process of evicting. R.R. at 23a-25a.

2

> *to provide notice to the homeowner of any default on this payment plan and this agreement is controlling, notwithstanding any provisions in the [RETSL] to the contrary.*
>
> I . . . agree to pay the following: $2060 due by: 6/24/2022 and $690.00 each and every month; to avoid my property from being exposed to the Upset Price Sale, September 22, 2022. [Bureau] agrees to Continue the Upset Price Sale if all payments are made on a regular basis. If [this] agreement is not followed, you will be in default and no other agreements can be made at this time. . . . All current real estate taxes are to be paid.
>
> . . . .
>
> You have made an agreement to pay your taxes on a timely basis. If this agreement is not kept, your property will go in the Upset Price Sale scheduled for September 22, 2022 . . . . If the agreement is followed, and after all notifications of sale have been met (mailings, posting by the Sheriff and advertisements), we will continue the sale to December 15, 2022 . . . .

R.R. at 63a-64a (italics emphasis added). In accordance with the Agreement, Taxpayer paid $2,060.00 on June 24, 2022. *Id.* at 10a. The Bureau continued the September 22, 2022 upset tax sale because Taxpayer made payments, the last of which he made on September 16, 2022, leaving a remaining balance of only $233.00. *Id.* at 11a.

The Bureau, finding the Agreement required payment in full by September 19, 2022, determined Taxpayer failed to satisfy the Agreement because he did not pay the remaining $233.00 by September 19, 2022. R.R. at 11a. On October 19, 2022, the Bureau mailed a letter to Taxpayer, addressed to the Property instead of the Residential Address, indicating

> your agreement is in Default. Therefore, it has been cancelled and the [P]roperty could be exposed in the next Tax Sale. Under the provisions of the [RETSL], your property will be sold at a time set by the Bureau.

3

> Furthermore, the Bureau is prohibited from entering a new installment agreement to stay a sale within three years of any default.

*Id.* at 65a. On November 1, 2022, the Bureau mailed a letter to Taxpayer, at the Residential Address, reminding him that the Property was scheduled for an upset tax sale on December 15, 2022. *Id.* at 66a. This letter referenced the "payment agreement" and provided "**[a]t this time – NO OTHER AGREEMENTS CAN BE MADE**." *Id.* (emphasis in original). This letter also explained that if Taxpayer defaulted on the Agreement, no new payment plans would be offered for three years. *Id.* The Bureau also attempted to contact Taxpayer by phone and e-mail regarding the December 15, 2022 upset tax sale.[3]

Taxpayer did not respond to any of the Bureau's attempts to notify him of the December 15, 2022 upset tax sale or pay the $233.00 outstanding balance on his 2020 real estate taxes. As a result, the Bureau exposed the Property to an upset tax sale on December 15, 2022, and Purchaser bought the Property at that sale. On December 17, 2022, the Bureau mailed Taxpayer, at the Residential Address, a notice that the Property had been sold. R.R. at 6a, 55a-56a. Thereafter, Taxpayer filed a petition to set aside the upset tax sale (Petition) with the trial court.

The trial court held a hearing on Taxpayer's Petition on July 25, 2023. Although the Bureau was represented by counsel at the trial court's hearing, the Bureau declined to "tak[e] a position," present any evidence, or question any witnesses. R.R. at 2a-3a. Taxpayer began by calling the Bureau's Upset Tax Sale Coordinator (Coordinator) to testify. *Id.* at 5a. Coordinator authenticated various documents in the Bureau's file, including the Agreement and all relevant notices. *Id.* at 6a-17a. Coordinator confirmed Taxpayer made payments under the

---

[3]   Due to our disposition, we need not further detail the Bureau's efforts to provide Taxpayer with notice of the December 15, 2020 upset tax sale.

Agreement. *Id.* at 11a. Coordinator also explained the Bureau considered Taxpayer to have defaulted on the Agreement when he failed to pay the entire outstanding balance by September 19, 2022. *Id.* at 11a.

Next, Taxpayer testified and explained the difference between his Residential Address and the Property's address, as well as the fact that the County sent his tax bills to the Residential Address. R.R. at 18a-25a. Taxpayer further testified that he did not receive any notice of the December 15, 2022 upset tax sale. *Id.* at 19a-34a.

Purchaser offered the testimony of Taxpayer's tenant (Tenant), who resided at the Property throughout the Bureau's upset tax sale proceedings. *Id.* at 35a. Tenant's testimony was limited to explaining that she sent Taxpayer a message on Facebook Messenger on October 28, 2022, indicating "[y]ou received a letter on the door from the Tax Claim Bureau." *Id.* at 36a-40a. Taxpayer responded by stating nobody had reached out to him, and he was not worried about the tax. *Id.* As a result, Tenant did not send Taxpayer photographs of the Bureau's correspondence or attempt to forward the letter to Taxpayer. *Id.* at 41a, 44a, 46a.

The trial court denied the Petition by order filed January 12, 2024. After Taxpayer appealed the trial court's order to this Court, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a). Therein, the trial court addressed Taxpayer's two issues in this appeal: (1) whether the Bureau violated Section 603 of the RETSL, 72 P.S. § 5860.603, by selling the Property in an upset tax sale less than 90 days after Taxpayer's default under the Agreement; and (2) whether the Bureau violated Section 607a of the RETSL, 72 P.S. § 5860.607a,[4] by failing to use reasonable and additional efforts to

---

[4] Added by the Act of July 3, 1986, P.L. 351.

locate and contact Taxpayer before the upset tax sale. *See* Trial Ct. Op., 3/27/24, at 2.

Regarding Taxpayer's allegations the Bureau sold the Property without waiting at least 90 days after his default, as required in Section 603 of the RETSL, the trial court opined:

> The [Agreement] was executed on June 24, 2022 and does not include the 2021 County, Borough and School District real estate taxes[, which] would have been returned to the [Bureau] before the date the Agreement was signed. **Neither party nor the [Bureau] developed a full record on this issue**. However, the entries dated December 19, and 20, 2022 on the upset sale contact sheets indicate that additional back real estate taxes were outstanding at the time of the December 15, 2022 sale.

*Id.* at 4 (emphasis added). The trial court concluded the Agreement was not governed by Section 603 of the RETSL because it did not include all taxes outstanding at the time. *Id.* at 5. As a result, the trial court determined the Bureau was not obligated to comply with Section 603 of the RETSL's 90-day waiting period. *Id.*

Regarding Taxpayer's allegations the Bureau did not use reasonable and additional efforts to locate and contact him under Section 607a of the RETSL, the trial court opined:

> The record in this proceeding establishes that [Taxpayer] had proper notice of the December 15, 2022 Upset Tax Sale for [the Property]. The repeated attempts by the [Bureau] through the testimony of [Coordinator] and the contact sheets establish compliance with Section 607a . . . . Herein, [Taxpayer] had actual notice of the sale . . . .
>
> . . . .
>
> the [Bureau] made repeated efforts to notify [Taxpayer] of his default prior to the December 15, 2022 Upset Tax Sale. [Taxpayer] contacted

6

the [Bureau] in October, 2022 after notice of the default. The [Bureau] sent notices to [Taxpayer's] home in the state of Delaware where he resided . . . and to [the Property's address].

Trial Ct. Op., 3/27/24, at 3-4, 5. Consequently, the trial court concluded "[t]he record before [the trial court] establishes a proper sale." *Id.* at 5.

## II.     Analysis

We review a trial court's decision denying a petition to set aside an upset tax sale to determine whether the trial court abused its discretion, committed an error of law, or rendered a decision not supported by substantial evidence. *In re Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018) (citation omitted). "It is the exclusive province of the trial court, as factfinder, to weigh the evidence, make credibility determinations and to draw reasonable inferences from the evidence presented." *Smith v. Tax Claim Bureau of Pike Cnty.*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003) (citation omitted). If the trial court's findings of fact are supported by substantial evidence, we "may not disturb those findings on appeal." *Id.* (citation omitted).

This Court has consistently held that the RETSL is designed to "assist[] in the collection of taxes and is not intended to create investment opportunities for others." *Jenkins v. Fayette Cnty. Tax Claim Bureau*, 176 A.3d 1038, 1043 (Pa. Cmwlth. 2018) (citations omitted). In addition, "[d]ue process is implicated in any taking of property for the collection of taxes." *Id.* The United States Supreme Court has explained:

> People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due

7

process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220, 234 (2006). Thus, we have explained that in considering the validity of tax sales under the RETSL, "the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute." *Smith v. Tax Claim Bureau of Pike Cnty.*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003).

"[O]nce an objector [to a tax sale] raises a specific defect, either in the objection petition or in proceedings before the trial court, the Bureau must prove that it complied with the provisions of RETSL that are relevant to that defect." *In re Hoyt* (Pa. Cmwlth., No. 869 C.D. 2023, filed March 17, 2025), slip op. at 5.[5] Typically, a tax claim bureau's failure to comply with each statutory requirement will nullify a sale. *Jenkins*, 176 A.3d at 1043 (citation omitted).

Sections 603 and 607a[6] of the RETSL are within the chapter of the RETSL governing upset tax sales. Section 603, titled "Removal from sale; agreements to stay sale," provides, relevantly:

> Any owner . . . may, at the option of the bureau, prior to the actual sale, . . . enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due **on all tax claims and tax judgments filed or entered against such property** and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. **So long as said agreement is being fully complied with by the taxpayer,**

---

[5] We may cite unreported memorandum opinions of this Court issued on or after January 15, 2008, for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[6] Due to our disposition, we need not examine the text of Section 607a of the RETSL.

**the sale of the property covered by the agreement shall be stayed.** But in case of default in such agreement by the owner . . . , the bureau, after written notice of such default given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent. If sufficient payment has been made to discharge all the taxes and claims which would have caused the property to be put up for sale, the property may not be sold. If sufficient payment has not been received to discharge these taxes and claims, the bureau shall proceed with the sale of such property in the manner herein provided either at the next scheduled upset sale or at a special upset sale, **either of which is to be held at least ninety (90) days after such default. If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default.**

72 P.S. § 5860.603 (emphasis added). When an owner pays at least 25% of the delinquent real estate taxes on a property, "[t]his Court has repeatedly held that . . . the tax authority is required to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights." *Moore v. Keller*, 98 A.3d 1, 5 (Pa. Cmwlth. 2014) (citations omitted).

Here, less than 90 days elapsed between the date the Bureau determined Taxpayer defaulted on the Agreement (September 19, 2022) and the date the Bureau sold the property at an upset tax sale (December 15, 2022). Therefore, if the Agreement is governed by Section 603 of the RETSL, then the Bureau's failure to comply with Section 603's 90-day provision would render the Bureau's upset tax sale of the Property invalid. The trial court avoided this outcome by finding the Agreement was not governed by Section 603 of the RETSL because it did not include all real estate taxes owed by Taxpayer.

9

The trial court's finding is not supported by substantial evidence. The trial court readily admitted "[n]either party nor the [Bureau] developed a full record" regarding whether there were any other outstanding real estate taxes on the Property at the time Taxpayer and the Bureau signed the Agreement.[7] *See* Trial Court Op., 3/27/24, at 4. Upon review of the hearing transcript and evidence presented to the trial court, we agree. No witness testified about real estate taxes other than the delinquent 2020 real estate taxes on the Property. *See generally* R.R. at 1a-54a. In addition, the documents the parties introduced as evidence[8] did not contain any information about real estate taxes other than the delinquent 2020 real estate taxes on the Property. *See generally* Original Record. Thus, the trial court did not have any evidence, let alone substantial evidence, from which it could find Taxpayer had outstanding tax delinquencies that were not included in the Agreement.

---

[7] The trial court asserted "entries dated December 19 and 20, 2022 on the upset sale contact sheets indicate that additional back real estate taxes were outstanding at the time of the December 15, 2022 sale." Trial Ct. Op., 3/27/24, at 4. Neither entry establishes that additional back taxes were due on December 15, 2022. *See* R.R. at 70a-71a. Even if the entries did establish that additional back taxes were due on December 15, 2022, that fact does not show there were outstanding tax claims or tax judgments against Taxpayer at the time Taxpayer and the Bureau executed the Agreement. *See* 72 P.S. § 5860.603.

[8] The Original Record, which the trial court remitted to this Court, contained a manilla envelope clipped to the trial court's hearing transcript with "Exhibits CV-2023-000628" handwritten on the outside. The envelope contained the trial court's original hearing exhibits. In the Reproduced Record, Taxpayer included a page (73a) at the end of the hearing exhibits which appears to be a printout of taxes owed for the Property, and which lists an outstanding balance, purportedly as of October 7, 2022, for the 2021 taxes on the Property. This page was not in the trial court's original hearing exhibits, nor did any party reference it at the hearing. Consequently, we presume this page was not introduced as evidence at the trial court's hearing. The trial court did not consider any information it contains, nor can we. *See* Pa.R.Civ.P. 1921 ("the record on appeal" includes "[t]he original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court . . ."); *Commonwealth v. Young*, 317 A.2d 258, 264 (Pa. 1974) ("Only the facts that appear [in the trial court record] may be considered by [an appellate] court.").

10

Next, disregarding the trial court's finding the Agreement was not governed by Section 603 of the RETSL because it did not include all outstanding real estate taxes on the property, we consider whether the Agreement is governed by Section 603 of the RETSL as a matter of law. We begin by noting that, because a taxing authority cannot sell a taxpayer's property to satisfy a tax delinquency without complying with the requirements of the RETSL, the RETSL establishes the exclusive procedures by which a Pennsylvania taxing authority can conduct an upset tax sale. *See Jenkins*, 176 A.3d at 1043 (noting this Court has repeatedly concluded a tax claim bureau must comply with each statutory requirement in the RETSL to effectuate a valid sale).

Section 601(a)(1) of the RETSL, 72 P.S. § 5860.601(a)(1), directs that the bureau "shall sell the property [at an upset tax sale] if all of the following are met:"

> (i) A tax claim has become absolute.

> (ii) **The property has not been** discharged from the tax claim nor **removed from sale under section 603**; or a tax judgment has been entered against the property prior to January 1, 1948, and is unsatisfied, and a sale of the property has not been stayed by agreement under this article.

> (iii) The property is not in the possession of the sequestrator [of rents].

72 P.S. § 5860.601(a)(1)(ii) (emphasis added). Section 601 uses the mandatory language "shall sell." As a result, a tax claim bureau must sell a property after a tax claim has become absolute unless it meets one of the exceptions in Section 601(a)(1)(ii) or (iii). The only exception implicated when a taxpayer enters into an installment payment agreement occurs if the property has been "removed from the sale under section 603" of the RETSL. 72 P.S. § 5860.601(a)(1)(ii). Thus, the sole

11

means of staying an upset tax sale pursuant to an installment payment agreement is in compliance with Section 603 of the RETSL.

It appears the trial court believed the Bureau developed the Agreement as a way of delaying the upset tax sale in exchange for payment of only the 2020 real estate taxes. The Agreement itself partially supports the trial court's belief because it states that the Bureau "will be under no obligation to provide notice to the homeowner of any default on this payment plan and this agreement is controlling, notwithstanding any provisions in the [RETSL] to the contrary." R.R. at 63a. In addition, the Agreement does not immediately stay the upset tax sale or remove the Property from the next scheduled upset tax sale, instead requiring additional timely payments for Taxpayer to obtain a stay. These provisions run afoul of Section 603 of the RETSL.

Nevertheless, as explained above, Section 603 of the RETSL is the sole means of staying an upset tax sale. *See* 72 P.S. § 5860.601(a)(1). The Agreement required payment of greater than 25% of the outstanding tax debt, provided for the upset tax sale to be stayed, and required further installment payments. These requirements all complied with Section 603 of the RETSL. In addition, the Bureau actually stayed the Property's upset tax sale in this matter. Therefore, we conclude the Agreement must be governed by Section 603 of the RETSL. To the extent the Agreement does not comport with Section 603 of the RETSL, we conclude the Agreement violated the RETSL. The terms of the contract must yield to the mandates of the statute.

In further support of our conclusion the Agreement is governed by Section 603 of the RETSL, the evidence presented showed the Bureau treated the Agreement as an Agreement under Section 603 of the RETSL. Specifically, after Taxpayer defaulted on the Agreement, the Bureau sent Taxpayer a default letter, indicating

12

"your agreement is in Default . . . [and] the Bureau is prohibited from entering a new installment agreement to stay a sale within three years of any default." *Id.* at 65a. The Bureau, in notifying Taxpayer of the December 15, 2022 upset tax sale, informed Taxpayer, again, that it could not enter into a new payment agreement with Taxpayer for the next three years. *Id.* at 66a. It is Section 603 of the RETSL which establishes that "[i]f a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with the person within three (3) years of the default." 72 P.S. § 5860.603.

Further, the Bureau bore the burden of proving it complied with the requirements of the RETSL. As outlined above, Taxpayer's evidence established the Agreement was governed by Section 603 of the RETSL. The Bureau did not present any evidence to carry its burden; nor did Purchaser present any evidence that would indicate the Agreement was not governed by Section 603 of the RETSL.

Finally, even if we somehow concluded the Agreement was not governed by Section 603 of the RETSL, the evidence presented before the trial court only showed Taxpayer had delinquent 2020 real estate taxes on the Property and that he made a payment on June 24, 2022, of over 25% of the outstanding tax due. If the Agreement was not already an agreement under Section 603 of the RETSL, Taxpayer's payment would have required the Bureau to inform Taxpayer of the option to enter into an installment payment agreement under Section 603 of the RETSL. *See Moore*, 98 A.3d at 5. The trial court received no testimony or evidence indicating the Bureau informed Taxpayer of this option. Therefore, if the Agreement was not governed by Section 603 of the RETSL, then the Bureau violated Taxpayer's due process rights by failing to offer an installment payment agreement under Section 603 of the

13

RETSL. *Id.* Either way, the Bureau's upset tax sale of the Property was invalid, and the trial court erred as a matter of law in determining the sale was proper.

We need not address Taxpayer's remaining issue because the Bureau's failure to comply with Section 603 of the RETSL renders the Bureau's upset tax sale invalid.

### III.  Conclusion

For the reasons set forth above, we conclude the trial court erred as a matter of law in denying Taxpayer's objection to the Bureau's upset tax sale of the Property, specifically as related to Section 603 of the RETSL.  Therefore, we reverse the trial court's order upholding the Bureau's upset tax sale of the Property.


_____

STACY WALLACE, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Henry McClain,                    :
                        Appellant       :
                                        :
            v.                          :  No. 114 C.D. 2024
                                        :
Delaware County Tax Claim Bureau        :
and Matthew Stanisic                    :


# **O R D E R**


**AND NOW**, this 28th day of August 2025, the January 12, 2024 order of the
Court of Common Pleas of Delaware County is **REVERSED**.


_____
STACY WALLACE, Judge