IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Powell and John Okal       :
                                 :
          v.                    :
                                 :
Luzerne County Tax Claim Bureau  :
                                 :
                                 :     No. 347 C.D. 2024
Appeal of: James Powell        :     Submitted: August 8, 2025

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT         FILED:  February 4, 2026

James Powell (Taxpayer), *pro se*, appeals an order of the Court of Common Pleas of Luzerne County (trial court) that dismissed his petition to set aside the upset tax sale of his residence. Taxpayer challenged the sale as not complying with the strict notice requirements of the Real Estate Tax Sale Law (Tax Sale Law).[1] The trial court held that Taxpayer was not an "owner" of this residence within the meaning of the statute and, thus, not entitled to notice from the Luzerne County Tax Claim Bureau (Tax Claim Bureau). For the reasons that follow, we reverse.

## Background

At issue is real property located at 59 Reno Lane in Wilkes-Barre, Pennsylvania (Property) that has been developed with a single-family dwelling. By deed dated September 12, 1928, and recorded on September 13, 1928, the Property was titled to John and Susan Okal. At some point the Property transferred to Mary Theresa Okal; however, that transfer was made without recording a new deed. Trial

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

Court Pa.R.A.P. 1925(a) Op. at 2; Reproduced Record at 98 (R.R. __).[2] After Mary Theresa Okal died, her estate devised her interest in the Property to Thomas Okal, John J. Okal, Albert Okal, and Rosemarie Okal (Okal Heirs). *Id*. In September of 2018, the Okal Heirs conveyed their interest in the Property to Taxpayer. This conveyance is stated in a 2018 deed that names Taxpayer as the sole grantee. R.R. 51-57. However, Taxpayer's 2018 deed has not been filed with the Luzerne County Recorder of Deeds.

In 2018, Taxpayer made payment to the Tax Claim Bureau on the Property's delinquent taxes. He also made payments in 2019 and 2020. In 2021, Taxpayer entered into an agreement with the Tax Claim Bureau to address taxes still owed on the Property. After Taxpayer defaulted on the terms of the agreement, the Property was listed for an upset sale on September 21, 2023, at which it was sold to PDNJ Property Group, LLC for $37,000.

Taxpayer timely filed a petition to set aside tax sale with the trial court. On December 15, 2023, the trial court conducted a hearing on the petition, at which testimony was given by Nadine Emel, assistant director of the Tax Claim Bureau; Charles Chihany, Jr., Taxpayer's neighbor; and Taxpayer.[3]

Taxpayer testified that he has lived at the Property since 2015. In 2018, he purchased it from the Okal heirs who executed the deed along with Taxpayer. That deed was entered into evidence. R.R. 51-57. Taxpayer did not record the deed

---

[2] The Reproduced Record is not paginated, as required by Pennsylvania Rule of Appellate Procedure 2173. Pa.R.A.P. 2173 (reproduced record is to be numbered in Arabic figures followed by a small "a."). The page numbers referenced in this opinion reflect the electronic pagination.

[3] At the hearing, the Tax Claim Bureau challenged Taxpayer's standing to file the petition, asserting that he was not the record owner of the Property. Taxpayer presented a copy of the 2018 deed. *See* R.R. 51-57. The trial court concluded that Taxpayer had standing to bring the petition because he was an equitable owner of the Property. In actuality, Taxpayer is the legal owner of the Property by virtue of his 2018 deed. Recording protects a titleholder's legal interest in real property.

because of the cost involved. Instead, he decided to prioritize payment of the back taxes owed on the Property and repairs that the house needed. Taxpayer explained that he fell behind on the real estate taxes because of his financial problems. However, he stated now that he has "another job," he can pay the real estate taxes when due. Notes of Testimony, 12/15/2023, at 38 (N.T. __); R.R. 12.

Taxpayer acknowledged that "John Okal" is listed as owner of the Property in the 1928 deed, the last deed to be recorded. Taxpayer believed, nevertheless, that the Tax Claim Bureau had the duty to send him notices of the scheduled upset sale because he has been dealing with the Tax Claim Bureau for years, both in person and by phone. Since 2018, the Tax Claim Bureau has accepted his payments on the Property's real estate taxes. He has had regular dealings with the Tax Claim Bureau, which entered into an installment agreement with him in 2021. Taxpayer testified that the Tax Claim Bureau "knew who to reach out to" but did not do so. N.T. at 36; R.R. 12.

Taxpayer conceded that he received a written notice on September 12, 2023, *i.e.*, "[nine] days before the actual sale took place," that had been addressed to "Okal John c/o James Powell." N.T. 36; R.R. 12, 65. However, because he has been living at the Property for "almost [10] years[, and he has] been paying for it for . . . almost [8] years," Taxpayer believed he was entitled to much earlier notice of the impending tax sale of his home. N.T. 38; R.R. 12.

Charles Chihany, Jr., Taxpayer's neighbor since 2015, testified. He described the work he has done on the Property for Taxpayer, including the installation of a fence; concrete work; repairs to the roof; and lawn maintenance. Chihany testified that he did not see a posted notice of the impending tax sale on the

3

Property in August of 2023. On cross-examination, Chihany testified that he lives four houses away from the Property.

Nadine Emel testified on behalf of the Tax Claim Bureau. She stated that the 1928 recorded deed states that John and Susan Okal are the owners of the Property. When Taxpayer contacted the Tax Claim Bureau and stated that he was the "current owner of the [P]roperty," he was told that the Property was "still in the name of John Okal." N.T. 15; R.R. 7. The Tax Claim Bureau informed Taxpayer that the amount due of taxes owed was $2,659.60; that the amount was "good until the end of August;" and "that he [could not] do a payment agreement because there was a default in 2021." *Id*.

Emel testified that Taxpayer contacted the Tax Claim Bureau again on September 18, 2023, stating that he was "coming in to get paperwork to see the Judge." N.T. 15; R.R. 7. However, the Tax Claim Bureau informed Taxpayer that "the taxes are not [i]n his name." R.R. 60. When Taxpayer responded that he has a deed in his name, he was told to bring the deed into the Assessment Office "to find out why it was not changed in the system[.]" *Id*. The upset tax sale for the Property went forward on September 21, 2023.

Emel testified about the Tax Claim Bureau's notifications to the Property's owners about the scheduled upset sale. On June 28, 2023, the Tax Claim Bureau sent notice, by certified mail, to John Okal at 7421 Tattersall Drive in Chesterland, Ohio. The certified mailing was returned as "refused." N.T. 16; R.R. 7. On August 18, 2023, the Tax Claim Bureau published notice of the Property's scheduled upset sale in two newspapers (The Times Leader and the Standard Speaker) and in a legal journal (the Luzerne Legal Register). On August 19, 2023, the constable posted notice of the upset sale on the window of the house on the

4

Property. On September 7, 2023, the Tax Claim Bureau sent, by first-class mail, a notice of the tax sale to "John Okal" at "59 Reno Lane,"[4] Wilkes-Barre. N.T. 7; R.R. 7. Emel noted that the Tax Sale Law requires that the notice be mailed at least 10 days before the sale, not that it be received 10 days prior to the sale.

On September 21, 2023, the Property was sold to PDNJ Property. Thereafter, on October 2, 2023, notice of the upset sale was sent to John Okal "c/o James Powell" at 59 Reno Lane, Wilkes-Barre by certified mail. R.R. 64.

On December 15, 2023, the trial court denied Taxpayer's petition to set aside the tax sale. The trial court then entered an order denying Taxpayer's motion for reconsideration.

In its Pa.R.A.P. 1925(a) opinion, the trial court explained that as an equitable owner of the Property, Taxpayer had standing to file his petition to vacate the tax sale. It rejected the Tax Claim Bureau's contention that Taxpayer lacked standing. However, the trial court concluded that Taxpayer was not an owner of the Property because his name did not appear in the registered tax rolls for the Property, and he was not named in the 1928 recorded deed. The trial court explained that it took "judicial notice of [the] deed, recorded in the Luzerne County Recorder of Deeds at Book 672, Page 591," which was the 1928 deed. Trial Court Pa.R.A.P. 1925 Op. at 2 n.2. Because Taxpayer did not meet the definition of "owner" in Section 102 of the Tax Sale Law, 72 P.S. §5860.102, the Tax Claim Bureau was not required to notify Taxpayer of the impending upset sale. However, even assuming that Taxpayer was entitled to notice of the Property's scheduled upset sale, the

---

[4] Section 602(e)(2) of the Tax Sale Law, 72 P.S. §5860.602(e)(2), requires the Tax Claim Bureau to send a notice, at least 10 days before the date of the sale, by first-class mail, if a return receipt is not received from each owner in response to the notice of the sale sent by certified mail.

evidence showed that he received actual notice of the sale on September 18, 2023, three days before the Property was sold at the upset sale.

### Appeal

On appeal,[5] Taxpayer raises six issues:

(1)    Does [Taxpayer] meet the criteria of [Section 601(a)(3) of the Tax Sale Law, 72 P.S. §]5860.601(a)(3),[6] and if so was [he] entitled to personal service under the [Tax Sale Law]?

(2)    Was the constables [sic] posting of the property validated by concrete evidence or posted by the Bureaus [sic] [t]estimony and [n]otes?

(3)    Whether the [Tax B]ureau used commonsense business practices in contacting [Taxpayer] 68 days after the refusal of certified mail by the heirs under [Section 602(e)(2) of the Tax Sale Law, 72 P.S. §]5860.602(e)(2)?

(4)    Does [Taxpayer] have equitable interest in the property and should have been notified per **Moore vs Keller[, 98 A.3d 1 (Pa. Cmwlth. 2014)]?**

(5)    Was [Taxpayer] improperly informed under [Section 607.1 of the Tax Sale Law]?[7]

(6)    Was there judicial error in not setting aside the tax sale?

_____

[5] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence." *Rice v. Compro Distributing, Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). As the fact finder, the trial court "has exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence presented." *Id.*

[6] This provision sets forth additional notice requirements for owner-occupied properties.

[7] Added by the Act of July 3, 1986, P.L. 351, 72 P.S. §5860.607a(a). It requires the Tax Claim Bureau to undertake "reasonable efforts to discover the whereabouts" of an owner when certified mail notice is returned unclaimed, the receipt is not returned or returned but defective, or in other circumstances "raising a significant doubt as to" whether the owner has received the mailed notice. *Id.*

6

Taxpayer Brief at 4 (emphasis in original). In the argument section of his brief, Taxpayer addresses whether he, as owner-occupant, was entitled to notice of the tax sale at least 10 days prior to the sale,[8] and this is the only issue we address.

## Analysis

We begin with a review of the applicable legal principles. An upset tax sale is conducted to recover "the total sum of the taxes owed plus any tax liens and municipal claims[.]" *In re Adams County Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018). The Tax Sale Law requires that advance notice of the upset tax sale be given to each owner of the property. *In re Upset Tax Sale of September 29, 2014*, 163 A.3d 1072, 1074-75 (Pa. Cmwlth. 2017). An owner is:

> the *person in whose name the property is last registered*, if registered according to law, *or*, if not registered according to law, *the person whose name last appears as an owner of record* on any deed or instrument of conveyance recorded in the county office designated for recording *and in all other cases means any person in open, peaceable and notorious possession of the property*, as apparent owner or owners thereof, or *the reputed owner or owners thereof*, in the neighborhood of such property; as to property having been turned over to the bureau under Article VII by any county, "owner" shall mean the county.

Section 102 of the Tax Sale Law, 72 P.S. §5860.102 (emphasis added). The Tax Sale Law requires three different forms of notice to be given to an "owner" prior to an upset tax sale: mail, publication, and posting. Section 602(e)(1) of the Tax Sale Law requires that the tax claim bureau provide notice of the tax sale "[a]t least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery,

---

[8] The Pennsylvania Rules of Appellate Procedure state that the brief's argument "shall be divided into as many parts as there are questions to be argued[.]" PA.R.A.P. 2119(a). Issues raised but not addressed within the argument section of the brief are deemed waived. *Borough of Ulysses v. Mesler*, 986 A.2d 224, 227 (Pa. Cmwlth. 2009).

return receipt requested, postage prepaid, to *each owner* as defined by [the Tax Sale Law]." 72 P.S. §5860.602(e)(1) (emphasis added). It also specifies:

> At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. §5860.602(a). Finally, the Tax Sale Law mandates that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. §5860.602(e)(3). "If any of the three types of notice is defective, the tax sale is void." *Wells Fargo Bank of Minnesota, NA v. Tax Claim Bureau of Monroe County*, 817 A.2d 1196, 1198 (Pa. Cmwlth. 2003). The Tax Claim Bureau "bears the burden of proving strict compliance with applicable notice provisions." *Citimortgage, Inc. v. KDR Investments, LLP*, 954 A.2d 755, 758 (Pa. Cmwlth. 2008).

In addition, where the property in question is occupied by an owner, the Tax Sale Law requires personal service of the tax sale notice on the owner. Section 601(a)(3) provides:

> No owner-occupied property may be sold *unless the bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by* the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service,

8

and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. §5860.601(a)(3) (emphasis added).

"Due process requires that an owner be given notice prior to property being sold at a tax sale." *Citimortgage, Inc.*, 954 A.2d at 759. Because of due process concerns, the "[n]otice provisions of the [Tax Sale] Law are to be strictly construed, and there must be strict compliance with such provisions to guard against deprivation of property without due process of law." *Ali v. Montgomery County Tax Claim Bureau*, 557 A.2d 35, 37 (Pa. Cmwlth. 1989). In other words, "[s]trict compliance with all notice requirements contained in the Tax Sale Law is an absolute requirement." *Citimortgage, Inc.*, 954 A.2d at 759.

With this background, we turn to Taxpayer's argument.

Taxpayer argues that he is an owner-occupant of the Property.[9] As such, the Tax Claim Bureau was required to serve him with personal notice of the upset tax sale at least 10 days prior to the date of actual sale. The Tax Claim Bureau responds that Taxpayer's name did not appear in either the tax rolls or on the Property's recorded deed. As such, Taxpayer does not meet the statutory definition of an "owner" and was not entitled to any notice of the scheduled upset tax sale of the Property. The Tax Claim Bureau's position cannot be reconciled with the plain terms of the Tax Sale Law.

---

[9] Taxpayer directs this Court to *Moore*, 98 A.3d 1. *Moore* involved a petition to set aside a tax sale filed by the executrix of the estate of a deceased record owner and taxpayer. *Moore* clarified that "[w]hether a party has standing to object to a tax sale and the right to notice of a tax sale are two different questions." *Id.* at 4. *Moore* is inapposite.

9

To begin, the Tax Sale Law does not limit its definition of "owner" to the person whose name appears in the tax rolls. Where the owner's name does not appear there, then an "owner" is the person "whose name" appears on "the deed or instrument of conveyance recorded in the county office." Section 102 of the Tax Sale Law, 72 P.S. §5860.102. But the statute does not stop there. It then provides that "in all other cases," an "owner" is a person in "open, peaceable, and notorious possession of the property[.]" *Id.*

Here, the trial court concluded that the name on the 1928 recorded deed established the "owner" of the Property for purposes of the notice requirements in the Tax Sale Law. However, the recorded deed lists "John and Susan Okal," and the trial court acknowledged that they are deceased.[10] Because the Property's "owner" could not be determined from either the registered tax rolls or the recorded deed, the determination of the Property's owner fell into the category of "all other cases." Section 102 of the Tax Sale Law, 72 P.S. §5860.102. As such, the "owner" was the "person in open, peaceable and notorious possession" of the Property. *Id.* That person was Taxpayer.

Taxpayer holds a deed of conveyance naming him as the sole owner of the Property; has made improvements to the Property; has lived there since 2015; and has paid the taxes on the Property since 2018. This constitutes open, peaceable and notorious possession of the Property. 72 P.S. §5860.102. Further, the Tax Claim Bureau's own records, which include its 2021 agreement with Taxpayer and notes

---

[10] Indeed, the trial court acknowledged that, upon their deaths, the Property transferred to "Mary Theresa Okal," who was also deceased, according to the trial court. The Tax Claim Bureau perversely used the name on the deed, "John Okal," but sent its notices to a "John Okal" who resided in Chesterland, Ohio. The Tax Claim Bureau provided no information on how it obtained either this "John Okal's" name or that address.

of conversations with Taxpayer about the 2021 and 2022 real estate taxes, support Taxpayer's testimony that the Tax Claim Bureau knew that he was an "owner" entitled to notice of the Property's upset sale.

The Tax Sale Law requires three different forms of notice to be given to a property owner prior to an upset tax sale: mail, publication, and posting. Section 607.1(a) of the Tax Sale Law requires additional notification efforts when "mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt . . . or is not returned or acknowledged at all[.]" 72 P.S. §5860.607a(a). In these instances:

> The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

*Id*. "Thus, where it is obvious that notice is not effectively reaching the owners of record, the [Tax Claim] Bureau must go beyond the mere ceremonial act of notice by certified mail." *Krawec v. Carbon County Tax Claim Bureau*, 842 A.2d 520, 524 (Pa. Cmwlth. 2004). Further, when the property is occupied by an owner, each owner-occupant must receive personal service of the tax sale notice. Section 601(a)(3) of the Tax Sale Law, 72 P.S. §5860.601(a)(3). The Tax Claim Bureau did not satisfy these statutory notice requirements.

11

The Tax Claim Bureau sent its certified mail notice to John Okal, who died in 1959.[11]  Unsurprisingly, the notice was returned as "refused."  N.T. 16; R.R. 7.  At that point, the Tax Claim Bureau had a duty to "make a reasonable effort to discover the identity and address of a person whose interests will likely be affected by the sale."  *Krawec*, 842 A.2d at 524.  The record lacks evidence of any such reasonable effort by the Tax Claim Bureau.  Quite the reverse, the Tax Claim Bureau continued to send its notices to a decedent at an address in Ohio instead of checking its own records for more recent and relevant information.

The Tax Claim Bureau's records showed that Taxpayer was living on the Property; that it had notified Taxpayer by phone about the taxes owed on the Property; and that it accepted payments from Taxpayer since 2018 for the taxes owed on the Property.  R.R. 61.  Its records further show that, in January of 2021, Taxpayer notified the Bureau he "[had not] been able to record deed [to the Property] due to COVID[.]"  R.R. 60.  In 2021, the Tax Claim Bureau entered into an installment agreement for the payment of the delinquent property taxes and stayed the sale of the Property.[12]  R.R. 60.  In short, the Tax Claim Bureau's records revealed

---

[11] In May of 2018, Rose Marie Okal, the wife of John Okal, the son of the original John Okal, informed the Tax Claim Bureau that her husband "was the executor of the estate [and] the house wasn[']t in the estate."  R.R. 59.  Mrs. Okal told the Tax Claim Bureau that she and her husband had "zero interest in the property [and were] not aware of anyone else to notify of delinquent taxes[.]"  *Id*.  The following year, in May of 2019, Mrs. Okal again contacted the Tax Claim Bureau to advise that "her husband John has no interest in the property[, and t]hey have been removed as [power of attorney.]"  *Id*.

[12] Section 603 of the Tax Sale Law provides, in pertinent part, as follows:

Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) *enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments* filed or entered

Taxpayer's occupation of, and interest in, the Property. Indeed, the Tax Claim Bureau's notice of the Property's sale was addressed to "c/o James Powell." R.R. 64. Nevertheless, the Tax Claim Bureau made no effort to send the notices to Taxpayer.

In *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003), this Court explained the Tax Sale Law "imposes duties not upon owners but upon the agencies responsible for real estate tax sales." "Notice to owners of an impending sale of their properties is a duty requiring strict compliance in order to guard against the deprivation of property without due process." *Id*. The Tax Claim Bureau erred in deciding that Taxpayer was not an owner entitled to receive all the statutory notices, including those that must be given to an owner-occupant. Taxpayer's "open, peaceable, and notorious possession of the property" made him an owner of the Property under Section 601(a)(3) of the Tax Sale Law. The Tax Claim Bureau had the burden of showing compliance with the statutory notice provisions of the Tax Sale Law, and it did not meet this burden.

---

against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment.

72 P.S. §5860.603 (emphasis added). Taxpayer subsequently defaulted on the installment agreement. R.R. 60.

**Conclusion**

Because the Tax Claim Bureau did not provide the notices required to be given to an owner of real property scheduled for an upset sale or the personal notice required where the owner occupies the real property in question, its sale of the Property violated the Tax Sale Law. Accordingly, we reverse the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Powell and John Okal   :
           :
     v.      :
           :
Luzerne County Tax Claim Bureau :
           :
           :
Appeal of: James Powell   :  No. 347 C.D. 2024

## **O R D E R**

   AND NOW, this 4th day of February, 2026, the order of the Court of Common Pleas of Luzerne County, dated December 15, 2023, is REVERSED.

               —————————————————————
               MARY HANNAH LEAVITT, President Judge Emerita